IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KELVIN SUTTON,** | : | **CIVIL ACTION NO. 1:19-CV-2080** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| v. | : | |
| | : | |
| **DR. PAUL NOEL,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Kelvin Sutton ("Sutton"), an inmate confined at State Correctional Institution, Dallas, Pennsylvania ("SCI-Dallas"), initiated this action pursuant to 42 U.S.C. § 1983. Presently before the court is Sutton's motion (Doc. 29) to compel discovery.[1] For the reasons set forth below, the motion will be granted in part and denied in part.

**I.     Factual Background & Procedural History**

The events giving rise to Sutton's cause of action stem from the Department of Correction's ("DOC") hepatitis C protocol, and the decision to deny him treatment pursuant to that policy. (Doc. 1). Sutton claims that the hepatitis C policy prevents inmates from receiving treatment until the inmate has developed cirrhosis. (Id. at 15-17). Sutton was diagnosed with hepatitis C while incarcerated

---

[1] Sutton has filed two requests for production of documents and a set of interrogatories with the court. (Docs. 19, 24, 25). These filings are not properly before the court and will be dismissed. See Local Rule of Court 5.4(b) ("Interrogatories. . . [and] requests for documents . . . and answers and responses thereto shall be served upon other counsel and parties but shall not be filed with the court. . .").

within the DOC and continues to suffer from related liver deterioration.  (Id. at 18). He alleges that he has never received treatment for his hepatitis C.  (Id.)

Sutton filed the instant motion (Doc. 29) to compel discovery wherein he seeks production of certain medical-related documents.  The motion is ripe for resolution.

## II.  Legal Standard

A party who has received evasive or incomplete discovery responses may seek a court order compelling disclosures or discovery of the materials sought. FED. R. CIV. P. 37(a).  The moving party must demonstrate the relevance of the information sought to a particular claim or defense.  The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper.  Goodman v. Wagner, 553 F. Supp. 255, 258 (E.D. Pa. 1982).

Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with "the fullest possible knowledge of the issues and facts before trial."  Hickman v. Taylor, 329 U.S. 495, 501 (1947).  Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . .  Information within this scope of discovery need not be admissible in evidence to be discoverable."  FED. R. CIV. P. 26(b)(1). "[A]ll relevant material is discoverable unless an applicable evidentiary privilege is asserted.  The presumption that such matter is discoverable, however, is defeasible."  Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000).  Furthermore, the

2

court may limit discovery if the discovery sought is unreasonably cumulative, duplicative, or readily obtainable from some other source, the party seeking discovery has had ample opportunity to obtain the information through discovery, or the proposed discovery is outside the scope permitted by Rule 26(b)(1). FED. R. CIV. P. 26(b)(2)(C).

### III. Discussion

Sutton takes issue with several of defendant's responses to his requests for production of documents. (Doc. 29). In his first request for production, Sutton seeks the following sixteen documents:

1. Produce any records that describe when Plaintiff tested positive for Hepatitis C.

2. Produce any records that describe what care and treatment Defendant Dr. Noel provided Plaintiff.

3. Produce any records that describe the standard of care for Hepatitis C treatment in the USA.

4. Produce any records that describe the standard of care for Hepatitis C treatment in the Penn. DOC.

5. Produce any records that identify the method used to determine that Plaintiff does not have cirrhosis.

6. Produce any records that identify the method used to determine that Plaintiff has compensated cirrhosis.

7. Produce any records that identify why the results of Plaintiff's visits when Plaintiff was seen in either the Liver Disease or Chronic Care Clinic Nov 2018, Jun[e] 2019 and Nov 2019.

8. Produce any records that identify the method used to determine that Plaintiff's Eczema was not borne from his Hepatitis C.

9. Produce any records that identify the procedure for determining when a patient will be treated.

10. Produce any records that list and identify all of Plaintiff's pertinent/relevant Hepatitis scores from 2015 to present, to include: viral load, HALT-C, FID, Child Pugh and Metavir.

11. Produce any records identified as Hepatitis C protocol.

12. Produce any and all records of the titles of staff members at DOC central office and at SCI Frackville who were personally involved in determining treatment for Plaintiff from 2015 to present.

13. Produce any records, reports and assessment tools used regarding treatment decisions in determining treatment of Plaintiff from 2015 to present.

14. Produce any records and reports used to determine the method used in determining that Plaintiff was found to have varices.

15. Produce any records, reports and assessment tools used [ ] to determine when Plaintiff was presented to a gastroenterologist.

16. Produce any records used to identify or describe the fiscal component in decisions of when Plaintiff should or should not receive treatment.

(Doc. 19). Sutton takes issue with defendant's responses to numbers 1, 2, 5, 7, 8, 10, 12, 13, 14, and 15. (Doc. 29 at 1). With the exception of request number 12, all of the information sought in plaintiff's motion to compel may be found in his medical records which we address below. With respect to request number 12, we will require the Department of Corrections to provide the identity and title of those individuals who either treated Sutton or were involved in any treatment decisions. We conclude that this specific information may not be readily apparent from a review of the medical records, particularly given the propensity for abbreviations in such records.

4

In his second request for production, Sutton seeks the following four documents:

1. Produce Dr. Pandya's reports from Hepatitis C clinics from 2015-2018.

2. Produce Dr. DeSantis's reports from Hepatitis C clinics from 2018.

3. Produce Dr. Mary Joy Mansalud's reports from Hepatitis C clinics from 2019 to 2020 (present).

4. Produce medical records for Plaintiff from 2015 to present.

(Doc. 24). Sutton challenges defendant's responses to all four requests. (Doc. 29 at 1).

In response to Sutton's requests, defendant does not directly respond to requests for "reports from clinics" but we will not require more fulsome responses because the requests—lacking any restriction to plaintiff's records—are obviously too broad and seek irrelevant information. We note that defendant does not necessarily object to Sutton's access to his own medical records. (See Doc. 30). Rather, defendant urges the court to direct Sutton to comply with the DOC procedures to request his own medical records. (Id. at 3). Defendant notes that an inmate may initiate a request for production of his own medical records pursuant to DC-ADM 003, Release of Information. (Id.) This procedure provides a method by which an inmate is given a reasonable amount of time to examine and inspect the requested documents. See DC-ADM 003.[2] As part of this procedure, the inmate

---

[2] A copy of the DOC's DC-ADM 003, Release of Information policy is available via the DOC's website at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/003%20Release%20of%20Information.pdf (last visited January 25, 2021).

must initiate the process by submitting Department Form DC-135A, Inmate Request to Staff, to the Superintendent's Assistant or appropriate staff member at his current institution.  See id.  The inmate may then review the documents and obtain copies of any documents at his expense.  See id.

The court finds that compliance with this prison policy is an appropriate procedure for Sutton to follow to access his own medical records.  Courts have frequently directed inmates to comply with reasonable institutional procedures when securing copies of their own prison medical records for litigation purposes. See, e.g., Bull v. United States, 143 F. App'x 468 (3d Cir. 2005).  Therefore, Sutton is directed to complete the DOC procedures to review his own medical records, and the motion to compel will be granted in this regard.[3]  However, the court will deny Sutton's request for defendant to provide him with courtesy copies of the above-listed documents.[4]

---

[3] Sutton acknowledges that he met with a nurse to review his medical records.  (See Doc. 31; see also Doc. 29 at 2).

[4] The court notes that 28 U.S.C. § 1915 does not authorize federal courts to finance or pay for a party's discovery expenses incurred while prosecuting a lawsuit, even if that party has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a).  See, e.g., Tabron v. Grace, 6 F.3d 147, 159 (3d Cir. 1993) ("There is no provision in [28 U.S.C. § 1915] for the payment by the government of the costs of deposition transcripts, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant.").

**IV.    Conclusion**

Sutton's request for access to his own medical records will be granted, in part, provided that he completes the procedures prescribed by the Department of Corrections to obtain such documents.  Defendant's shall supplement their response to request number 12 as set forth herein.  The court will deny Sutton's motion to compel defendant to provide him with free copies of his medical records.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:      February 1, 2021